Jeff Carruth (TX SBN:. 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
3030 Matlock Rd., Suite 201
Arlington, TX 76015
Telephone: (713) 341-1158
Fax: (866) 666-5322
E-mail: jcarruth@wkpz.com

ATTORNEYS FOR
ANSON FINANCIAL INC.
DEBTOR AND DEBTOR IN POSSESSION

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SHEKINAH OILFIELD SERVICES, | § | CASE NO. 21-10152 |
| INC., | § | (Chapter 11) |
| | § | |
| DEBTOR. | § | |
| | § | |

**FIRST AMENDED SUBCHAPTER V PLAN OF REORGANIZATION OF
SHEKINAH OILFIELD SERVICES, INC. DATED May 10, 2022**

## 1. INTRODUCTION AND BACKGROUND INFORMATION.

1.1.    This *First Amended Plan of Reorganization of Shekinah Oilfield Services, Inc. Dated May 10, 2022* (the "*Plan*") under Subchapter V of Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq. (the "*Code*") proposes to pay creditors of Shekinah Oilfield Services, Inc. (the "*Debtor*" or "*Shekinah*") from cash flow from future operations. This plan supersedes any prior versions of the Plan.

1.2.    Shekinah filed this case on November 2, 2021 ("the Petition Date") as a Chapter 11 case under Subchapter V of Chapter 11. Brad O'Dell is the Subchapter V Trustee.

1.3.    For convenience, this plan is based upon the former official small business form, Form B25B. ***Controlling definitions and rules of construction appear in Section 9 below.***

1.4.    The proposed distributions under the Plan and the material terms of the Plan, including the estimated distribution to unsecured creditors is set forth in TABLE 1—Key Plan Terms, Section 2 of the Plan below ("***TABLE 1***"). As provided throughout herein, the Plan generally provides for the repayment of allowed secured claims and otherwise provides for a total distribution of $10,000 to general unsecured creditors.

1.5.    All creditors and equity security holders should refer to Section 3 through Section 6 of this Plan for information regarding the precise treatment of their claim. ***You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)***

1.6.    **Description and History of the Debtor's Business.**  Shekinah began operations in 2007 and was incorporated on January 1, 2010.  Shekinah primarily engages in the business of the repair of pumps and related oilfield equipment.  The founders and owners of Shekinah are James L. Knight and Shawna L. Knight who continue to work daily in the operations of the Debtor.

1.7.    **Insiders and Management of Shekinah.**  James L. Knight is the President and he will continue to serve as President, and Shawna L. Knight is the Vice President and she will continue to serve as Vice President.

1.8.    **Significant events before and during the Chapter 11 case.**

1.8.1.   *Events Leading to Chapter 11 Filing.*  The Debtor commenced this case to address the indebtedness owed to First National Bank of Albany/Breckenridge that has long burdened the Debtor since the origination of such debt in 2014 (or before) and the steady decline in the size and income of the Debtor, punctuated by the overall downturns in the hydrocarbons market in 2014, 2018, and 2020.

1.8.2.   *Events during and information relating to this Bankruptcy Case:*  The entirety of the events that have occurred during this Chapter 11 case may be found on docket sheet of this case available at the Court or through the PACER website of the Court, ***https://ecf.txwb.uscourts.gov/.***  Any of the documents on file in this case may be obtained by contacting the undersigned law firm or are available at the following shared folder link shown in the footnote below and selecting the folder for this case.[1]

1.8.3.   *Projected Recovery of Avoidable Transfers and other claims and causes of action of the estate.*  Shekinah shall retain all avoidance actions or any other lawsuits under Code §§544, 547, 548, 549, and/or 550 including any objections to claims and any related set offs.  Due to the time and expense of pursuing any such claims, the Debtor does not predicate its performance under the Plan upon any Chapter 5 recoveries.

> ***Otherwise, Shekinah may provide notice of additional claims and/or causes of action by a supplement to the Plan to be filed within seven (7) days of the Confirmation Hearing.***

1.8.4.   *Objections to Claims.*  Except to the extent that a claim is already allowed pursuant to a final non-appealable order, Shekinah reserves the right to object to all claims (including scheduled claims and regardless of whether any claims are scheduled as

---

[1] https://drive.google.com/drive/folders/10FjPeCLT_Y4SXuXSB0nZIcGKNMjdm77g?usp=sharing

contingent, unliquidated and/or disputed) through and until and even after the Effective Date. Any objection to a scheduled claim shall be deemed to be an amendment to the schedules. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.

1.9. **Current And Historical Financial Conditions.**

1.9.1. The assets and liabilities of Shekinah are described in the Schedules (Docket No. 12) and Statement of Financial Affairs (Docket No. 13), as may be amended, and filed by Shekinah in this case. A summary of the assets of and claims against Shekinah appears in **Exhibit SHEK301**[2] **Exhibit SHEK302** attached hereto.

1.9.2. A liquidation analysis appears in **Exhibit SHEK303**.

1.9.3. Projections in support of the Plan appear in **Exhibit SHEK304**. The Debtor's projections are designed to account for various possibilities over the life of the Plan including that the oil and gas industry will encounter one or two more up and down cycles during the course of the Plan.

1.9.4. Shekinah reserves the right to amend any of the schedules, projections, and other information in support of the Plan prior to the Confirmation Hearing.

1.9.5. The most recent operating report of the Debtor is available on PACER, the Google drive link described above, and/or or by contacting the undersigned.

---

[2] The Debtor is consecutively numbering all exhibits throughout this case. The exhibits related to the plan and disclosure statement will being with the number 300 beginning with the ballot exhibit to distinguish from previous exhibits used in this case.

**2.** **SUMMARY OF THE PLAN, TABLE 1 — KEY PLAN TERMS**. The key terms of this Plan are summarized in TABLE 1 below. In the event of a conflict between Table 1 and the text of the Plan, the text of the Plan shall control.

| Class | Creditor | Impaired | Allowed Claim | Interest Rate Per Year | # Payments | Payment Per Month | Total Payments By Plan | Note |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| **Non-classified Claims** | | | | | | | | |
| | WKPZ Fees (estimated) | n/a | 15,000 | n/a | 2 | n/a | 15,000 | 1 |
| | SubV Trustee | n/a | 3,000 | n/a | 2 | n/a | 3,000 | |
| **Secured Claims** | | | | | | | | |
| 1 | Property taxes 2021 | No | 5,453 | 10.00% | 55 | 123 | 0 | (paid) |
| 2 | FNB Land | Yes | 126,255 | Per Note | | 1,544 | 92,635 | 2 |
| 3 | FNB Equipment | Yes | 350,000 | 5.00% | 60 | 6,578 | 444,652 | 2 |
| 4 | Kubota 001 | Yes | 30,966 | Per Contract | | 874 | 21,140 | 3 |
| 5 | Kubota 002 | Yes | 17,422 | Per Contract | | 311 | 17,112 | 3 |
| 6 | Financial Pacific | Yes | 18,791 | Per Contract | | 0 | 0 | 3 |
| 7 | CP International | Yes | 0 | 0.00% | 0 | 0 | 0 | 4 |
| **Priority Unsecured Claims** | | | | | | | | |
| | None. | | n/a | n/a | n/a | n/a | n/a | |
| **General Unsecured Claims** | | | | | | | | |
| 8 | General Unsecured | No | 114,273 | 0 | 20 | 166 | 10,000 | 5 |
| **Equity Interests** | | | | | | | | |
| 9 | Equity interests - see below | RETAIN | | | | | | |

| EQUITY IN REORGANIZED DEBTOR | | | | |
|---|---|---|---|---|
| Holder | % Interest | Pre-Bk Interest | Disposition | |
| J. Knight | 50.00% | 50.00% | Retain. | |
| S. Knight | 50.00% | 50.00% | Retain. | |

| MANAGEMENT AFTER REORGANIZATION | | | |
|---|---|---|---|
| Name | Position | Comp. Per Month | Comp. Per Year |
| J. Knight | President | 9,000 | 108,000 |
| S. Knight | Vice President | 5,000 | 60,000 |
| *Note: Compensation dependent upon payment of claims and-or funds available.* | | | |

| EXECUTORY CONTRACTS AND/OR LEASES TO BE ASSUMED | | | | |
|---|---|---|---|---|
| Counter Party | Description of Contract | Cure Amount | Payments Per Month | |
| Kubota | Equipment | 0 | 874 | 6 |
| Kubota | Equipment | 0 | 311 | 6 |
| Various | Any insurance policies in effect | 0 | 50 | |

| EXECUTORY CONTRACTS AND/OR LEASES TO BE REJECTED | | |
|---|---|---|
| Counter Party | Description of Contract | |
| Financial Pacific | Any and all service obligations | 6 |
| Any and all other contracts | | |

| NOTE | 1 - Estimated amount, in addition to initial retainer. |
|---|---|
| NOTE | 2 - On equipment, treatment is $350,000 over 60 months + $50,000 balloon. |
| | On land note, remaining amortization of notes extends beyond 60 months of the Plan. |
| NOTE | 3 - Debtor surrenders the collateral in full satisfaction of claim. |
| NOTE | 4 - Any claim is time-barred and-or subject to set off. Abandoned equipment inventory will be retained |
| | by Debtor unless CPI recovers in 60 days from Effective Date. |
| NOTE | 5 - Distributions to be made quarterly. |
| NOTE | 6 - To the exent is an executory contract of lease and not a secured financing arrangement. |

**3. CLASSIFICATION OF CLAIMS**

The classification of claims and interests and the impairment of claims and interests is set forth in TABLE 1 and /or the Exhibits attached to the Plan.

**4. TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS**

4.1. **Unclassified Claims.** Certain types of claims are automatically entitled to specific treatment under the Code. Under Code §1123(a)(1), administrative expense claims, and priority tax claims are not in classes. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, pursuant to Code §1129(a)(1), the Debtor has *not* placed such claims in any class.

4.2. **Administrative Expenses.** Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code §507(a)(2). Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

As of the filing of this Plan, the Debtor has received no notice of any administrative expense, other than attorneys' fees and expenses of Weycer Kaplan Pulaski & Zuber P.C. ("WKPZ") incurred for Shekinah and the fees of the Subchapter V Trustee. As a condition of and prior to the Effective Date, Shekinah shall reserve sufficient funds to satisfy the anticipated final allowed administrative claim of each of WKPZ and Subchapter V Trustee or may reach other arrangements by agreement with such parties.

4.3. **Priority Tax Claims.** Priority tax claims are unsecured income, employment, and other taxes described by Code §507(a)(8). Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding five (5) years from the Petition Date. As of the filing of this Plan, the Debtor believes that no such claims exist.

**5. TREATMENT OF CLAIMS AND INTERESTS.** The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan.

5.1. **Class 1 — Ad Valorem Taxes.**

5.1.1. Identity of Claims in Class: Class 1 consists of the allowed secured claim(s) of any governmental entity asserting ad valorem property tax claims against any property of the Debtor (collectively, the "*Ad Valorem Tax Claimants*").

5.1.2. Treatment: The Debtor/Reorganized Debtor shall pay all amounts allowed and owed to the Ad Valorem Tax Claimants in equal monthly installments over the 60-month period commencing with the first full calendar month following the

Effective Date. Regardless of whether the allowed claims are disputed or undisputed, the Ad Valorem Tax Claimants shall receive interest from the Petition Date through the Effective Date and from the Effective Date through payment in full at the state statutory rate pursuant to Code §§ 506(b), 511, and 1129.

Each of the Ad Valorem Tax Claimants shall retain its statutory lien in, to, and/or against property of the Debtor. Nothing contained in the Plan alters the due date for the payment of the 2022 taxes in 2023.

The Confirmation Order may contain additional provisions regarding the enforcement of the allowed claim post-effective date at the request of the creditor.

As of this filing, the Debtor believes that all 2021 ad valorem taxes due in 2022 have been paid in full in the ordinary course of business.

5.1.3. <u>Voting</u>. Class 1 is unimpaired and deemed to accept the Plan.

5.2.  **Class 2 — First National Bank of Albany/Breckenridge — Real Estate Note.**

5.2.1. <u>Identity of Claims in Class:</u> Class 2 consists of the First National Bank of Albany/Breckenridge ("*FNB*") real estate lien note (Proof of Claim No. 8) which is secured by the 5.89 acres of land located at 3400 E. US Hwy 180, Albany, Texas 76430.

5.2.2. <u>Treatment:</u> Shekinah shall resume payment of and/or continue to pay the FNB real estate lien note according to its terms. FNB shall retain its lien, and all pre-petition loan and security documents shall remain in full force and effect except as modified by the Plan.

*This Class also shall be subject to the Temporary Injunction contained in Section 13.2 below.*

<u>**Notice of default and opportunity to cure.**</u> In the event of any default in the payments required under Class 2 or other obligations of the existing loan documents, FNB shall provide written notice of default to the Debtor and provide a period of not less than ten (10) days to cure any such defaults before exercising any rights or remedies provided by the existing loan documents and/or applicable law.

5.2.3. <u>Voting</u>. Class 2 is impaired and may vote to accept or reject the Plan.

5.3.  **Class 3 — First National Bank of Albany/Breckenridge Operating Note.**

5.3.1. <u>Identity of Claims in Class:</u> Class 3 consists of the Promissory Note (Proof of Claim No. 9) in the original principal amount of $1,130,011.52 (the "*FNB Facility*"). The FNB Facility is secured by various UCC-1 financing statements and certificates of title against the equipment and accounts of the Debtor. The FNB Facility originated in 2012 and was renewed on one or more subsequent occasions.

5.3.2. <u>Treatment:</u>  The indebtedness evidenced by the Class 3 claim for the FNB Facility, and Proof of Claim No. 9, will modified to and will be allowed and treated as a secured claim in the total amount of $400,000.00 consisting of

(1) a first tranche in the original principal amount of $350,000.00 which amount will bear interest at the rate of 5.00% per annum from the Effective Date and will be paid in sixty (60) equal monthly installments and amortized over sixty (60) months from the Effective Date with payments commencing on the first full day of the of the first full calendar month following the Effective Date, and

(2) a second tranche in the original principal amount of $50,000.00 that shall not bear interest and which shall be due and payable as a balloon payment due on the first day of the month on the sixty-first (61st) full calendar month following the Effective Date.

There will be no deficiency claim of or for FNB in Class 8 as a result of the modification of the indebtedness provided herein, and the entire indebtedness for both the underlying obligations of the FNB Facility and for any guaranty related to the FNB Facility will be deemed to be in the total amount of $400,000.00 as of the Effective Date.

Upon successful completion of these payments, the FNB Facility and all liability for the FNB Facility on the part of the Debtor and any guarantor including but not limited to James K. Knight and Shawna L. Knight, shall be satisfied in full.

FNB will retain all security interests and liens through completion of the payments described above.  The nonmonetary provisions of the Promissory Note, Security Agreement, and other loan and security documents entered into between the Debtor and FNB (the "*Existing Loan Documents*") will otherwise remain in effect except as modified by the Plan.

***This Class also shall be subject to the Temporary Injunction contained in Section 13.2 below.***

**<u>Notice of default and opportunity to cure.</u>**  In the event of any default in the payments required under Class 3 or other obligations of the Existing Loan Documents, FNB shall provide written notice of default to the Debtor and provide a period of not less than ten (10) days to cure any such defaults before exercising any rights or remedies provided by the Existing Loan Documents and/or applicable law.

5.3.3. <u>Voting</u>.  Class 3 is impaired and may vote to accept or reject the Plan.

5.4. **Class 4 — Kubota Note #1.**

    5.4.1. <u>Identity of Claims in Class:</u> Class 4 consists of the retail installment contract between the Debtor and Kubota Credit Corporation for the financing of the KUBOTA SVL95-2SHFC 46795 as shown in Proof of Claim No. 4.

    5.4.2. <u>Treatment:</u> The Debtor shall resume and/or continue to make all contractual payments required under the relevant retail installment contract. Kubota shall retain its liens through completion of the payment schedule.

        ***This Class also shall be subject to the Temporary Injunction contained in Section 13.2 below.***

        <u>**Notice of default and opportunity to cure.**</u> In the event of any default in the payments required under this class, then the holder(s) of the allowed claim(s) shall provide written notice of default to the Debtor and provide a period of not less than ten (10) days to cure any such defaults before exercising any rights or remedies under the existing contract(s) or loan documents and/or under applicable law.

    5.4.3. <u>Voting</u>. Class 4 is impaired and may vote to accept or reject the Plan.

5.5. **Class 5 — Kubota Note #2.**

    5.5.1. <u>Identity of Claims in Class:</u> Class 5 consists of the retail installment contract between the Debtor and Kubota Credit Corporation for the financing of the KUBOTA ZD1211L-3-72 KBGGDCF0CMGC34136 as shown in Proof of Claim No. 6.

    5.5.2. <u>Treatment:</u> The Debtor shall resume and/or continue to make all contractual payments required under the relevant retail installment contract. Kubota shall retain its liens through completion of the payment schedule.

        ***This Class also shall be subject to the Temporary Injunction contained in Section 13.2 below.***

        <u>**Notice of default and opportunity to cure.**</u> In the event of any default in the payments required under this class, then the holder(s) of the allowed claim(s) shall provide written notice of default to the Debtor and provide a period of not less than ten (10) days to cure any such defaults before exercising any rights or remedies under the existing contract(s) or loan documents and/or under applicable law.

    5.5.3. <u>Voting</u>. Class 5 is impaired and may vote to accept or reject the Plan.

5.6. **Class 6 — Financial Pacific.**

    5.6.1. <u>Identity of Claims in Class:</u> Class 6 consists of the Equipment Finance Agreement between the Debtor and Financial Pacific Leasing, Inc. for the lease-purchase of a various collateral as shown in Proof of Claim No. 5 and as listed below

(collectively, the "*FP Collateral*"). The FP Collateral is mechanically obsolete and/or the cost of repair to make the collateral useful exceeds the value of the FP Collateral.

> 2012 Freightliner VIN #1FUJGLDR1CSBR8506
> 2012 Freightliner VIN #1FUJGLBG8CSBN6173
> 1996 Fontaine Trailer VIN #13N248309T1565784

5.6.2. <u>Treatment:</u>   The Debtor shall surrender (or already has surrendered) the FP-Collateral in full and complete satisfaction of the claims of Financial Pacific. This treatment applies to and fully resolves Proof of Claim No. 5.

5.6.3. <u>Voting</u>. Class 6 is impaired and is entitled to vote for or against the Plan.

5.7. **Class 7 — CP International — Unsecured claim with setoff.**

5.7.1. <u>Identity and background.</u>  The Debtor and CP International, Inc. ("*CPI*") previously were the subject of a prepetition distribution agreement and/or consignment agreement whereby CPI placed certain equipment inventory with the Debtor or for sale by the Debtor and the remittance of proceeds to CPI. The Debtor in 2015 or 2016 fell behind in its remittance obligations to CPI. On or about November 15, 2015 the Debtor entered into a settlement agreement with CPI, however, the Debtor subsequently defaulted in the performance of that settlement agreement. Based upon the Petition Date, and the timing of the default(s), the Debtor believes that any applicable statute of limitations has lapsed with respect to any remaining obligations of the Debtor to CPI. The last known balance of approximately $321,209 is unenforceable against the Debtor.

Meanwhile, since 2015, the Debtor has requested that CPI retrieve the remaining equipment inventory from the Debtor, and the Debtor has been unable to communicate with anyone at CPI and/or CPI has not otherwise sought to retrieve the equipment inventory. Accordingly, the equipment inventory was abandoned prior to the Petition Date by CPI and has become the property of the Debtor by the passage of time and/or the operation of law, and/or CPI has incurred storage charges with the Debtor since at least November 15, 2015 which storage charges meet or exceed, and which could be set off against, any amounts that might be owed to CPI.[3]

5.7.2. <u>Treatment.</u>

    5.7.2.1.   CPI will receive no distribution from the Debtor, and any claim will be deemed to be barred by limitations and/or by the setoffs which have accrued to date on account of the storage of the equipment inventory as described above. To the extent necessary, this treatment constitutes an

---

[3] The CPI equipment inventory is not included in the Debtor's liquidation analysis. Any pump jacks or other equipment inventory for sale by the Debtor are separate items from the abandoned CPI equipment inventory.

objection to the claim of CPI under Code § 502.[4]

    5.7.2.2.  With respect to the disposition of the remaining equipment inventory, unless CPI retrieves such equipment inventory within sixty (60) days of the Effective Date, then the Debtor will consider such remaining equipment inventory to be forever abandoned and to constitute the property of the Debtor.

5.7.3.  <u>Voting</u>.  Class 7 is impaired and is entitled to vote for or against the Plan.

5.8.  **Class 8 — General Unsecured Claims.**  This class consists of allowed general unsecured claims that are not secured by property of the estate and that are not entitled to priority under §507(a) of the Code.

5.8.1.  <u>Identity of General Unsecured Claims</u>:  As set forth in SHEK302, the Class 8 general unsecured creditors consist of general unsecured claims asserted in aggregate amount of approximately $114,273.00.

5.8.2.  <u>Treatment of General Unsecured Claims</u>:  The holders of allowed claims in Class 8 will receive a pro rata distribution of $2,000 per year for each of the five (5) years following the Effective Date, with a distribution occurring at the end of each calendar quarter commencing with the first full calendar order following the Effective Date.[5]

***This Class also shall be subject to the Temporary Injunction contained in Section 13.2 below.***

**<u>Notice of default and opportunity to cure.</u>**  In the event of any default in the payments required under this class, then the holder(s) of the allowed claim(s) shall provide written notice of default to the Debtor and provide a period of not less than ten (10) days to cure any such defaults before exercising any rights or remedies under the existing contract(s) or loan documents and/or under applicable law.

5.8.3.  <u>Voting.</u>  Class 8 is impaired and may vote for or against the Plan.

5.9.  **Class 9 — Class of Equity Interest Holders.**

James L. Knight and Shawna L. Knight shall continue to own all shares of Shekinah after the Effective Date.

Each equity interest holder shall retain its interest following confirmation of the Plan.

Class 9 is unimpaired and is deemed to accept the Plan.

---

[4] The Debtor has separately filed an objection to the CPI scheduled claim concurrent with this Plan.

[5] The projections Exhibit SHEK304 show a monthly distribution for cash flow purposes only and *<u>not</u>* to indicate a monthly distribution.

## 6.    ALLOWANCE AND DISALLOWANCE OF CLAIMS

6.1.    <u>Disputed Claim.</u> A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

6.2.    <u>Delay of Distribution on a Disputed Claim.</u> No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

6.3.    <u>Settlement of Disputed Claims.</u> After the Effective Date, the Debtor will have the power and authority to settle and compromise a disputed claim without court approval and without compliance with Bankruptcy Rule 9019.

## 7.    PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1.    The Debtor ***ASSUMES*** the executory contracts and/or unexpired leases referenced and described in TABLE 1 upon the date of the entry of the order confirming this Plan, including specifically any executory contracts and/or leases between Shekinah and Kubota to the extent such are true leases and not secured financing arrangements. Otherwise, the Debtor will assume any executory contract for which a motion to assume is granted or pending prior to the Effective Date.

7.2.    The Debtor will be conclusively deemed to have ***REJECTED*** all executory contracts and/or unexpired leases not expressly assumed above, or before the Effective Date.

To the extent that the prior agreements between the Debtor and the following parties constitute(d) executory contracts and/or unexpired leases, the Debtor rejects its agreement(s) with each of the following

> Financial Pacific, Inc.
> CP International, Inc.

However, the Debtor believes that (1) the agreement(s) with Financial Pacific constitute a secured financing agreement fully satisfied by the surrender of collateral provided in Plan § 5.6 above and (2) CP International, Inc. possessed no claim or rights against the Debtor as of the Petition Date, as provided in Plan § 5.7 above.

7.3.    **PROOF OF CLAIM FOLLOWING REJECTION: A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than <u>fourteen (14) days</u> after the date of the order confirming this Plan.** Any such claim will be treated, if allowed general unsecured claim and the general unsecured creditor class will be adjusted accordingly.

## 8. MEANS OF IMPLEMENTING THE PLAN.

8.1. **Source of Payments.** Payments and distributions under the Plan will be funded by the continued operations of the Debtor.

8.2. **Distribution of Payments, Disbursing Agent.** The reorganized Debtor shall be the disbursing agent for payments under the Plan, or in the event of a confirmation under Code §1191(b), then the Subchapter V Trustee shall act as the disbursing agent, unless the court orders otherwise. ***In the event of confirmation under Code §1191(b) or under any other circumstances, the Debtor by this Plan will seek to be the post-confirmation disbursing agent in order to reduce costs and to save time and expenses.***

8.3. **Post-confirmation Management.** The post-confirmation management of the Debtor, and the compensation for each such person is set forth in the in TABLE 1. Compensation is subject to potential fluctuation as funds are available.

8.4. **Risk Factors.** The proposed Plan has the following risks: Continued fluctuations in the Texas energy market and overall economy in general, thus imparting the ability of the Debtor to generate income. An additional risk to general unsecured creditors is any order that CP International possess some unsecured claim.

## 9. GENERAL PROVISIONS

9.1. **Definitions and Rules of Construction.** The definitions and rules of construction set forth in Code §§101 and 102 shall apply when terms defined or construed in the Code. Other terms are defined throughout the Plan, and terms may be defined in the and then used in the Plan and vice versa.

9.1.1. Any reference to the Debtor that applies to any period of time after the Effective Date shall refer to the Debtor as the Reorganized Debtor.

9.1.2. In addition, the following terms used in the Plan are defined below.

9.1.2.1. ***"Confirmation Hearing"*** shall mean and refer to the hearing conducted by the Court to consider this Plan.

9.1.2.2. "***Confirmation Order***" shall mean and refer to the order confirmation this Plan.

9.2. **Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.3. **Captions**. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.4.  **Primacy of the Plan and Confirmation Order.**  To the extent of any conflict or inconsistency between the provisions of the Plan on the one hand, and the Confirmation Order on the other hand, the provisions of the Confirmation Order shall govern and control.

> *Unless directed by the Court to so earlier, the Debtor will file notice of a proposed Confirmation Order seven (7) days prior to the Confirmation Hearing.*

9.5.  **Binding Effect.**  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

9.6.  **Controlling Effect.**  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

9.7.  **Corporate Governance.**  No change in the corporate governance structure of the Debtor is required to fulfill the Plan.

9.8.  **Corporate Authority.**  All actions and transactions contemplated under the Plan shall be authorized upon confirmation of the Plan without the need of further approval, notice or meetings, that might otherwise be required under applicable state law or otherwise, other than the notice provided by serving this Plan on all known creditors of Shekinah, all interest holders, and all current directors or managers of Shekinah.

9.9.  **Sales of Property.**  Any sales, transfers, and/or conveyances of some or all of the Subject Property shall be made pursuant to, at minimum, constitutes sales under Code §§ 363(f), 1122(a)(5), and/or 1125(b)(4), and each such sale, transfer, and/or conveyance shall be free and clear and any lien, claims, encumbrances, and/or any other interests, expect as specified above with respect to particular Lots and/or particular conveyances.

9.10.  **Fixing of Claims.**  To the extent that the modification and/or fixing of any claim occurs under the Plan, the Plan also constitutes an objection to any filed proof of claim and/or scheduled claim under Code §502 and/or Bankruptcy Rules 3007 and 9014, and any applicable Local Rules.

9.11.  **Settlement of Claims and Disputes.**  The Plan also constitutes a motion under Bankruptcy Rule 9019 to the extent necessary to confirm the Plan.

9.12.  **Debtor name change.**  The Debtor may change its name and/or adopt one or more business aliases after the Effective Date.

## 10. EFFECT OF CONFIRMATION OF PLAN — REVESTING OF PROPERTY AND DISCHARGE

On the effective date of the Plan, all property of the estate shall vest and-or revest in the reorganized Debtor, whereupon the Debtor, subject to the retention of liens and other matters addressed

elsewhere in the Plan, shall possess the authority to use, sell, encumber, or otherwise transact all such property without further order of or jurisdiction of the Court,

On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in Code §1141(d)(1)(A) except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in Code §1141(d)(6)(A) if a timely complaint was filed in accordance with Bankruptcy Rule 4007(c), or (iii) of a kind specified in Code §1141(d)(6)(B). After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

**THE CONFIRMATION ORDER SHALL BE A JUDICIAL DETERMINATION OF DISCHARGE OF ALL LIABILITIES OF THE REORGANIZED DEBTOR, AND ITS SUCCESSORS IN INTEREST AND ASSIGNS, OTHER THAN THOSE OBLIGATIONS SPECIFICALLY SET FORTH PURSUANT TO THE PLAN**. Except as otherwise provided in the Plan or herein, from and after the Effective Date, all persons and entities that have held, currently hold, or may hold any Claims against the Debtor, (or other right of any equity security holder that is cancelled under the terms of the Plan) are forbidden from taking any of the following actions against the Debtor, the Reorganized Debtor or any of their respective property on account of any such Claims or Interests or rights related thereto: (a) commencing or continuing in any manner, any suit, action, or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor; (d) creating, perfecting, or enforcing any lien or encumbrance; and (e) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan or the Code; provided, however, that the foregoing injunction shall not limit or preclude any person or entity from exercising its rights pursuant to the terms of the Plan or any document executed pursuant thereto.

## 11. <u>EFFECTIVE DATE OF PLAN.</u>

The effective date of the Plan (the "*Effective Date*") shall be the first business day following the date that is fourteen (14) days after the entry of the order of confirmation**, provided, however, the Debtor may alter the Effective Date at the Confirmation Hearing or in the Confirmation Order to be an earlier date, as soon as the first business day after entry of the Confirmation Order**. If, however, a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after the date on which the stay of the Confirmation Order expires or is otherwise terminated. *The Effective Date may occur without further notice by the Debtor*.

## 12. <u>FINAL DECREE</u>

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## 13. OTHER PLAN PROVISIONS

13.1. **Scope and Retention of Jurisdiction.** The Bankruptcy Court shall retain jurisdiction to: *(i)* hear and determine pending applications for the assumption or rejection of contracts or leases and the allowance of Claims resulting therefrom; *(ii)* hear and determine any and all adversary proceedings, applications, and contested matters, including any remands of appeals, and including any Estate Actions; provided, however, that the Reorganized Debtor shall not be required to seek or obtain approval of the Bankruptcy Court under Bankruptcy Rule 9019 or otherwise as to the settlement or compromise of any Estate Actions post-Effective Date; *(iii)* ensure that distributions to holders of Allowed Claims are accomplished as provided herein; *(iv)* hear and determine any timely objections to or applications concerning Claims or the allowance, classification, priority, estimation, or payment of any Claim or Interest, and to enter Estimation Orders; *(v)* hear and determine all Fee Applications and Fee Claims; provided, however, that the Reorganized Debtor shall not be required to seek or obtain approval of the Bankruptcy Court under section Code §330 or otherwise as to the allowance or payment of professional fees post-Effective Date; *(vi)* enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated; *(vii)* hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan; *(viii)* enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder; *(ix)* consider any modification of the Plan pursuant to Code § 1127, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order; *(x)* enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer and enforce injunctions provided for in the Plan and the Confirmation Order; *(xi)* recover all assets of the Debtor and property of the estate, wherever located; *(xii)* hear and determine matters concerning state, local, and federal taxes in accordance with Code §§ 346, 505, and 1146; *(xiii)* hear and determine any other matter not inconsistent with the Code and title 28 of the United States Code that may arise in connection with or related to the Plan; and enter a final decree closing the Bankruptcy Case; and (xiv) to reopen the case and enforce the Plan as set forth in Section 5 above.

13.2. **TEMPORARY INJUNCTION DURING PERFORMANCE OF THE PLAN.**

James L. Knight and Shawna L. Knight are full time employees of the Debtor and work daily in the operations of the Debtor. Both are integral to the performance of the Plan.[6]

> *Accordingly, all creditors in Classes 2-6 above shall be temporarily restrained and enjoined from enforcing any rights and/or remedies that night exist and/or taking any action with respect to JAMES L. KNIGHT and/or SHAWNA L. KNIGHT with respect to any guaranty and/or indemnity obligations of any creditor that might exist so long as the Debtor does not default in the obligations required of the Debtor under the Plan (or*

---

[6] *In re Seatco, Inc.*, 257 B.R. 469, 476-78 (Bankr. N.D. Tex.).

> *fail to cure a default after notice and opportunity to cure, as applicable) following the*
> *Effective Date.*

13.3. **Litigation and retained causes of action.** Shekinah expressly retains the claims and causes of action referenced and described in **Exhibit SHE305**.

> *Otherwise, Shekinah may provide notice of additional claims and/or causes of action by*
> *a supplement to the Plan to be filed within seven (7) days of the Confirmation Hearing.*

**SHEKINAH OILFIELD SERVICES, INC.,**
**DEBTOR AND DEBTOR-IN-**
**POSSESSION**

By:/s/ James L. Knight
**James L. Knight, President**

**Counsel to the Debtor and**
**Debtor in Possession:**

**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
Jeff Carruth (SBT #24001846)
3030 Matlock Rd., Suite 201
Arlington, TX 76015
(713) 341-1158
(866) 666-5322 (fax)
E-mail: jcarruth@wkpz.com

**FIRST AMENDED SUBCHAPTER V PLAN OF REORGANIZATION OF**
**SHEKINAH OILFIELD SERVICES, INC. Dated May 10, 2022 — Page 16**

2133522.DOCX[1]

| EXHIBIT SHEK301 | | | | |
|---|---|---|---|---|
| **Assets as of Petition Date** | | | | |
| **No Admission of Liability** | | | | |
| **Asset Description** | | | **Value on Schedule A-B** | |
| AR 90 days or less | | | 71,200.08 | |
| AR Over 90 days | | | 23,486.02 | |
| Other Inventory or supplies | | | 120,500.00 | |
| Kubota Mower | | | 15,000.00 | |
| Office furniture | | | 2,000.00 | |
| Automobiles, vans, trucks… | | | 229,300.00 | 366,800.00 |
| 5.39 ac | | | 80,865.00 | |
| | | | | |
| **TOTAL** | | | **542,351.10** | |

**EXHIBIT SHEK302**

| ClaimNo | Class | Claimant | Secured | Priority | Unsecured | Total | Notes |
|---|---|---|---|---|---|---|---|
| | | **EXHIBIT SHEK302** | | | | | |
| | | **Scheduled Claims and Proofs of Claim Analysis** | | | | | |
| | | **NO ADMISSION OF LIABILITY** | | | | | |
| 1 | 1 | Shackelford CAD | 5,453 | | | 5,453 | Property Taxes |
| 8 | 2 | FNB Albany Breckenridge | 124,680 | | | 124,680 | Deed of Trust |
| 9 | 3 | FNB Albany Breckenridge | 1,130,012 | | | 1,130,012 | UCC-1 |
| 4 | 4 | Kubota Credit Corp. (#1) | 30,966 | | | 30,966 | Lease, Last Payment Scheduled 9/26/2024 |
| 6 | 5 | Kubota Credit Corp. (#2) | 15,000 | | 2,422 | 17,422 | Lease, Last Payment Scheduled 6/7/2026 |
| 5 | 6 | Financial Pacific Leasing Inc. | 18,791 | | | 18,791 | Surrender. |
| 2 | 7 | Capital One | | | 389 | 389 | |
| Schedule F | 7 | CP International, Inc. | | | 0 | 0 | Disputed (face amount is $321.209). |
| Schedule F | 8 | Amur Equipment Finance, Inc. | | | 22,016 | 22,016 | Scheduled / late claim allowed. |
| Schedule F | 8 | Certified Laboratories | | | 303 | 303 | |
| Schedule F | 8 | Cintas Corporation | | | 1,462 | 1,462 | |
| Schedule F | 8 | Filtration Specialties Co. | | | 6,072 | 6,072 | |
| Schedule F | 8 | G&H Sales, Inc. | | | 14,000 | 14,000 | |
| Schedule F | 8 | KS Supplies, Inc. | | | 17,009 | 17,009 | |
| Schedule F | 8 | Lufkin Industries, LLC | | | 2,363 | 2,363 | |
| Schedule F | 8 | Resist-ALL Electric, LLC | | | 5,942 | 5,942 | |
| 7 | 8 | ROCO Machine & Supply Ltd. | | | 29,099 | 29,099 | |
| Schedule F | 8 | SOGIANT PetroEquip USA Corp. | | | 4,862 | 4,862 | |
| 3 | 8 | Sweetwater EC&M | | | 1,805 | 1,805 | |
| Schedule F | 8 | T&W Tire | | | 1,762 | 1,762 | |
| Schedule F | 8 | Western Marketing, Inc. | | | 6,138 | 6,138 | |
| Schedule F | 8 | Zep Sales & Service | | | 1,051 | 1,051 | |
| | | | | | **TOTAL** | **1,441,597** | |
| | | | | | Class 7 Total | 114,273 | |

2133522.DOCX[3]

**EXHIBIT SHEK303**

| EXHIBIT SHEK303 | | |
|---|---|---|
| **Liquidation Analysis** | | |
| **No Admission of Liability** | | |
| | | |
| Cash | $30,000.00 | |
| Total FFEI | $100,000.00 | |
| Total Land | $80,865.00 | |
| AR | $0.00 | |
| | | |
| **TOTAL** | **$210,865.00** | |
| | | |

**EXHIBIT SHEK304**

---

# EXHIBIT SHEK304

## PROJECTIONS

**THE PROJECTED FINANCIAL INFORMATION AND OTHER FORWARD LOOKING STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE BASED ON VARIOUS ASSUMPTIONS AND ESTIMATES AND WILL NOT BE UPDATED TO REFLECT EVENTS OCCURRING AFTER THE DATE HEREOF.    SUCH INFORMATION AND STATEMENTS ARE SUBJECT TO INHERENT UNCERTAINTIES AND TO A WIDE VARIETY OF SIGNIFICANT BUSINESS, ECONOMIC, AND COMPETITIVE RISKS INCLUDING, AMONG OTHERS, THOSE DESCRIBED HEREIN. CONSEQUENTLY, ACTUAL EVENTS, CIRCUMSTANCES, EFFECTS AND RESULTS MAY VARY SIGNIFICANTLY FROM THOSE INCLUDED IN OR CONTEMPLATED BY SUCH PROJECTED FINANCIAL INFORMATION AND SUCH OTHER FORWARD-LOOKING STATEMENTS.**

**EXHIBIT SHEK305**

**RETAINED CAUSES OF ACTION**

Any and all claims and/or causes of action existing under Chapter 5 of the Code, including but not limited to any such claims or causes of action referenced or described in the Schedules, Statement of Financial Affairs, and/or any other pleadings or other filings of the Debtor in or under this bankruptcy case.